# United States Court of Appeals for the Federal Circuit

---

**POKARNA ENGINEERED STONE LIMITED,**
*Plaintiff*

**M S INTERNATIONAL, INC.,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES, CAMBRIA COMPANY LLC,**
*Defendants-Appellees*

---

2022-1077

---

Appeal from the United States Court of International Trade in No. 1:20-cv-00127-LMG, Senior Judge Leo M. Gordon.

---

Decided:  January 5, 2023

---

JONATHAN STOEL, Hogan Lovells US LLP, Washington, DC, argued for plaintiff-appellant.  Also represented by MICHAEL JACOBSON, CRAIG A. LEWIS, NICHOLAS SPARKS.

JOSHUA E. KURLAND, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee United States. Also represented by BRIAN M. BOYNTON, TARA K. HOGAN, PATRICIA M. MCCARTHY; VANIA WANG, Office of the Chief

Counsel for Trade Enforcement & Compliance, United States Department of Commerce, Washington, DC.

LUKE A. MEISNER, Schagrin Associates, Washington, DC, argued for defendant-appellee Cambria Company LLC.  Also represented by MICHELLE ROSE AVRUTIN, BENJAMIN JACOB BAY, NICHOLAS J. BIRCH, CHRISTOPHER CLOUTIER, ELIZABETH DRAKE, WILLIAM ALFRED FENNELL, JEFFREY DAVID GERRISH, KELSEY RULE, ROGER BRIAN SCHAGRIN.

---

Before MOORE, *Chief Judge*, LOURIE and PROST, *Circuit Judges*.

LOURIE, *Circuit Judge*.

MS International ("MSI") appeals from a decision of the United States Court of International Trade ("the Trade Court") sustaining the United States Department of Commerce's ("Commerce's") Final Determination in its Investigation of Quartz Surface Products ("QSPs") from India.  *See Pokarna Engineered Stone Ltd. v. United States*, 547 F. Supp. 3d 1300 (Ct. Int'l Trade 2021) ("*Decision*"); *Certain Quartz Surface Products from India: Final Determination of Sales at Less Than Fair Value and Final Negative Determination of Critical Circumstances*, 85 Fed. Reg. 25,391 (Dep't of Commerce May 1, 2020) ("*Final Determination*").  For the reasons provided below, we affirm.

## BACKGROUND

MSI is a U.S. importer of QSPs.  QSPs are stone composite building materials that are used primarily for countertops.  Production of QSPs involves (1) the creation of a QSP slab from raw materials and (2) fabrication that transforms the slab into a finished product.  In 2019, Cambria, a domestic quartz slab producer, filed a petition for imposition of antidumping duties on QSPs from India.  MSI challenged Cambria's standing to file the petition, alleging

that Cambria failed to include QSP "fabricators" as domestic industry "producers" in its industry support calculation. MSI's submission included letters that MSI had obtained from various fabricators that opposed Cambria's petition. MSI alleged that, if the views of "fabricators" were included in the industry support calculation, then there would be insufficient industry support to proceed with the petition.

Commerce initiated an investigation in May 2019. *Certain Quartz Surface Products from India and the Republic of Turkey: Initiation of Less-Than-Fair-Value Investigations*, 84 Fed. Reg. 25,529 (Dep't of Commerce June 3, 2019) ("Initiation") and accompanying Initiation Checklist (May 29, 2019) ("Checklist"); J.A. 1002–1046. Commerce determined that the fabricators did not perform sufficient production-related activities to be considered "producers" for purposes of determining industry support. Commerce stated that the information Cambria had submitted made it "clear that there are significant differences in the level of complexity and capital investment, employment, training and technical expertise, production processes, and type of equipment, between quartz surface slab producers and fabricators." Checklist, Attachment II at 14; J.A. 1030. In particular, Commerce determined that the evidence established that "there are seven steps in the production of quartz surface products: (1) mixing raw materials, (2) combining, (3) dispensing and molding, (4) pressing, (5) curing, (6) cooling, and (7) polishing." Checklist, Attachment II at 15; J.A. 1031. In contrast, Commerce found that fabricators engage in a process where they "(1) consult with customers, (2) develop engineering diagrams, (3) perform intricate cutting, and (4) perform various edge and surface finishing operations." Checklist, Attachment II at 15; J.A. 1031.

In summary, Commerce found that fabricators have far lower capital investment, considerably less specialized knowledge, fewer employees, and utilize broadly available equipment compared to quartz slab production. In

conclusion, Commerce found that "the fabrication process does not change the fundamental physical characteristics imparted during the slab production process," Checklist, Attachment II at 14; J.A. 1030, and that "producers" did not include "fabricators," Checklist, Attachment II at 16; J.A. 1032.

MSI and Pokarna Engineered Stone Ltd., a large Indian exporter of QSPs, independently sought judicial review by the Trade Court of Commerce's Final Determination. Their appeals were consolidated. The Trade Court determined that the term "producers" is not defined in the statute and further stated that, "[w]ithout a definition, there is no clear statutory answer as to whether 'producers' is broadly defined so as to include QSP fabricators for purposes of Commerce's industry support analysis." *Decision*, 547 F. Supp. 3d at 1305. The Trade Court further held that Commerce's interpretation of "producers" as entities that have a stake in the domestic industry was reasonable, and that Commerce's reliance on the "sufficient production-related activities test" to interpret the term "producers" was lawful. *Id.* at 1305, 1306. The Trade Court further sustained Commerce's determination that fabricators are not producers for industry support purposes as having been supported by substantial evidence. *Id.* at 1309.

In summary, Commerce determined, and the Trade Court sustained, that the term "producer" did not include "fabricators" for purposes of the industry support calculation. MSI appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(5).

## DISCUSSION

Commerce must impose antidumping duties on imported goods that are being sold, or are likely to be sold, in the U.S. at "less than fair value," which could harm the U.S. domestic industry. 19 U.S.C. §§ 1673, 1677(34). Commerce initiates antidumping investigations based on a

petition filed by the domestic industry alleging injury by unfairly traded imports. To initiate the investigation, Commerce must "determine if the petition has been filed by or on behalf of the industry" (*i.e.*, whether there is adequate industry support). 19 U.S.C. § 1673a(c)(1)(A)(ii).

The term "industry" is defined in the statute as "the producers . . . of a domestic like product, or those producers whose collective output of a domestic like product constitutes a major proportion of the total domestic production of the product." 19 U.S.C. § 1677(4)(A). To be filed on behalf of the domestic industry, domestic producers or workers who support the petition must account for (1) at least 25 percent of the total production of the domestic like product and (2) more than 50 percent of the production of the domestic like product produced by the portion of the industry expressing support or opposition to the petition. 19 U.S.C. § 1673a(c)(4)(A). "Domestic producers or workers" is defined as "interested parties who are eligible to file a petition under [19 U.S.C. § 1673a(b)(1)]." 19 U.S.C. § 1673a(c)(5). "Interested parties" include "a manufacturer, producer, or wholesaler in the United States of a domestic like product." 19 U.S.C. § 1677(9)(C). The terms "manufacturer, producer, or wholesaler" are not defined by the statute.

MSI raises two challenges on appeal. First, MSI argues that Commerce erred in determining that the term "producer" in § 1677(9)(C) did not include "fabricators." Second, MSI contends that Commerce's finding that "fabricators" are not "producers" was not supported by substantial evidence. We address each argument in turn.

We uphold a Commerce determination unless it is unsupported by substantial record evidence or is otherwise unlawful. *Union Steel v. United States*, 713 F.3d 1101, 1106 (Fed. Cir. 2013) (quoting 19 U.S.C. § 1516a(b)(1)(B)(i)). A finding is supported by substantial evidence if a reasonable mind might accept the evidence as

adequate to support the finding. *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). "[W]here two different, inconsistent conclusions may reasonably be drawn from the evidence in record, an agency's decision to favor one conclusion over the other is the epitome of a decision that must be sustained upon review for substantial evidence." *In re Jolley*, 308 F.3d 1317, 1329 (Fed. Cir. 2002).

To determine whether a company engages in "sufficient production-related activities" to be considered a "producer," Commerce considers six factors. The International Trade Commission ("ITC") originated these factors and uses them in determining whether an entity is part of a domestic industry. The factors are as follows: (1) the source and extent of the entity's capital investment; (2) the technical expertise involved in its U.S. production activities; (3) the value added to the product in the U.S.; (4) employment levels; (5) the quantity and type of parts sourced in the U.S.; and (6) any other costs and activities in the U.S. directly leading to production of the like product. *See, e.g.*, Checklist, Attachment II at 10; J.A. 1026.

I

We first consider MSI's challenge to Commerce's determination that the term "producer" in §§ 1673a and 1677(9)(C) does not include "fabricators." MSI argues that Commerce acknowledged that "fabricators" are "producers" of the domestic like product and thus acted unlawfully by excluding "fabricators" from its industry support calculations. MSI asserts that § 1673a(c)(4)(B) provides two limited exceptions excluding U.S. producers from industry support calculations: (1) when producers are related to foreign producers and (2) when producers are importers. MSI contends that neither exception applies here, so Commerce was required under § 1673a(c)(4)(D) to gather additional information on industry support before initiating the investigation. In the absence of such additional information, Commerce was required to terminate the investigation.

MSI further contends that under *Chevron* step one, Commerce's decision to exclude certain U.S. producers of the domestic like product from its definition of the domestic industry and industry support calculation violated the clear terms of the statute. Even though "producer" is not defined in the statute, MSI asserts, the absence of a definition does not equate to ambiguity at *Chevron* step one. MSI asserts that the ordinary meaning of the term "producer" is sufficient, and thus proceeding to step two is not required.

Cambria and the government respond that MSI's claim that Commerce found "fabricators" to be "producers" and then excluded them from the industry support calculation without meeting a statutory exception is a mischaracterization of Commerce's findings. Cambria and the government further respond that Commerce did not act unlawfully by excluding QSP fabricators from its industry support calculations. Cambria and the government agree that the statute is silent with respect to the term "producer" and so Commerce lawfully proceeded to *Chevron* step two, filling the gap in the statute by reasonably interpreting "producer" to mean a company that performs sufficient production-related activities in the U.S. such that it has a stake in the domestic industry.

We first note that Cambria and the government are correct in stating that MSI's contention that Commerce found "fabricators" to be "producers" is a mischaracterization of Commerce's findings. Commerce did not find "fabricators" to be "producers." Instead, Commerce stated that "fabricators do not perform sufficient production-related activities to qualify as domestic producers of [QSPs]." Checklist, Attachment II at 16; J.A. 1032. To say that fabricators do not perform sufficient production-related activities to be considered producers does not equate with MSI's contention that Commerce found fabricators to be producers and then excluded them from the industry support calculation.

It is undisputed that the term "producers" is not defined in the statute. However, we need not employ a *Chevron* analysis as urged by MSI because our precedent has already interpreted the term "producers." In *Eurodif S.A. v. United States*, we held that Commerce's interpretation of the term "producer" as an entity with sufficient production-related activities such that it has a stake in the domestic industry in question was not unreasonable. 411 F.3d 1355, 1360–61 (Fed. Cir. 2005). At issue in *Eurodif* was whether domestic utilities or foreign enrichers of uranium were "producers" of low enriched uranium for purposes of determining whether there was sufficient industry support to begin an antidumping and countervailing duty investigation. *Id.* at 1358. Commerce determined that, "to be a producer, an entity must have a 'stake' in the domestic industry in question," further defining having a stake as "undertaking the actual production of the domestic like product within the United States." *Id.* at 1360 (citations and internal quotation marks omitted). The Trade Court sustained Commerce's determination, and we affirmed, holding that there was no basis to conclude that Commerce's interpretation of the term "producer" was unreasonable or not in accordance with the law. *Id.* at 1360–61. The question in *Eurodif* and the question here are the same: was Commerce's definition of "producer" for purposes of an industry support calculation reasonable? As in *Eurodif*, we answer here in the affirmative. Thus, *Eurodif* controls. Accordingly, we find no error in Commerce's defining a producer as one having a stake in the industry.

To determine whether fabricators had a sufficient "stake" in the industry to be considered producers of QSPs, Commerce employed the sufficient production-related activities test. In using the test, Commerce observed that QSP producers create QSPs by "(1) mixing raw materials, (2) combining, (3) dispensing and molding, (4) pressing, (5) curing, (6) cooling, and (7) polishing." Checklist, Attachment II at 15; J.A. 1031. In contrast, Commerce

observed that QSP slab fabricators use what is already producer-made QSPs and "(1) consult with customers, (2) develop engineering diagrams, (3) perform intricate cutting, and (4) perform various edge and surface finishing operations" on already existing QSPs. Checklist, Attachment II at 15; J.A. 1031. Commerce concluded that the six factors did not support the conclusion that fabricators were producers of the domestic like product. We find no error in Commerce's use of the sufficient production-related activities test, and we further hold that the use of the test was reasonable in determining the definition of "producer" and whether fabricators had a sufficient "stake" in the U.S. industry to be considered producers.

In summary, we affirm Commerce's interpretation of the term "producers" as an entity that requires a stake in the domestic industry. We further affirm Commerce's use of the sufficient production-related activities test to determine that the fabricators did not have a sufficient stake in the domestic industry and thus did not qualify as "producers" for purposes of calculating industry support.

## II

We next consider MSI's challenge to the Trade Court's holding that Commerce's finding that "fabricators" are not "producers" was supported by substantial evidence.

MSI contends that, even if Commerce could lawfully employ the sufficient production-related activities test, its decision was not supported by substantial evidence because Commerce failed to consider evidence and to articulate a satisfactory explanation for its decision. MSI asserts that none of Cambria's exhibits reveals a rational connection between Commerce's asserted facts and the choices it made, and that Commerce did not conduct a critical examination of Cambria's claims. MSI notes that the Trade Court acknowledged that Commerce could have reached an alternative finding.

MSI further contends that Commerce's findings are entitled to little deference because the ITC, which originated the sufficient production-related activities test, reached the opposite conclusion, determining that "fabricators" were "producers" in a related investigation. Further, MSI argues that the ITC issued U.S. producer questionnaires to fabricators in related antidumping investigations, which foreshadowed its findings that fabricators are producers.

Cambria and the government respond that MSI fails to meet the burden for establishing that Commerce's determination was not supported by substantial evidence. Cambria and the government contend that MSI merely asks for a reweighing of the evidence, which is not a valid basis for overturning Commerce's determination. Cambria and the government assert that Commerce analyzed and addressed all arguments and evidence and noted that Commerce is prohibited from reconsidering industry support after an investigation is initiated.

Cambria and the government further respond that Commerce and the ITC can reach separate determinations on the same issue, and that the ITC had sent producer questionnaires to fabricators in a separate investigation does not alone imply that the ITC would find the fabricators to be producers without further information.

We agree with Cambria and the government that Commerce's determination was supported by substantial evidence. Commerce carefully considered the record evidence, including Cambria's exhibits that contain multiple examples of differences between producers and fabricators. Commerce relied on several exhibits illustrating the differences in cost between establishing a QSP production plant and a fabrication shop. Pet'r's Resp. to MSI's Comments on Standing, Exs. 3–5; J.A. 944–968. Commerce also relied on several exhibits discussing business operations of successful fabrication businesses, the equipment fabrication businesses use, and the smaller number of employees

fabrication businesses have compared to production companies. Pet'r's Resp. to MSI's Comments on Standing, Ex. 7; J.A. 971–976. We note, as did the Trade Court, that MSI is unable to point to anything other than Commerce's adverse finding that fabricators are not producers as evidence of Commerce's alleged failure to consider the evidence in front of it. *Decision*, 547 F. Supp. 3d at 1308. Finally, that the Trade Court stated that Commerce could have reached an alternative finding is not sufficient to establish that Commerce's finding was not supported by substantial evidence. *Mitsubishi Heavy Indus. Ltd v. United States*, 275 F.3d 1056, 1062 (Fed. Cir. 2001) ("[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."). In conclusion, MSI does not meet its burden in establishing that Commerce's determination was not based on substantial evidence.

We further note that there is no requirement that Commerce and ITC reach the same conclusion on the same issue. In fact, we have repeatedly held that Commerce and the ITC can reach separate determinations on the same issue. *Hosiden Corp. v. Advanced Display Mfrs. of Am.*, 85 F.3d 1561, 1568 ("The division of responsibility between the [ITC] and Commerce is integral to the statutory scheme," and this "division of labor has been upheld even where it has resulted in decisions which are difficult to reconcile . . . ." (citations omitted)); *Torrington Co. v. United States*, 747 F. Supp. 744, 748 (Ct. Int'l Trade 1990) (stating that Commerce and the ITC reaching two different conclusions is not unanticipated under the law), *aff'd*, 938 F.2d 1278 (Fed. Cir. 1991); *Algoma Steel Corp. v. United States*, 688 F. Supp. 639, 644 (Ct. Int'l Trade 1988) ("This division of labor has been upheld even where it has resulted in decisions which are difficult to reconcile."), *aff'd*, 865 F.2d 240 (Fed. Cir. 1989), *cert. denied*, 492 U.S. 919 (1989). Congress has indicated the same. Statement of Administrative

Action accompanying the Uruguay Round Agreements Act, H.R. Doc. No. 103–316, at 858 (1994) (stating that Commerce and the ITC could reach different decisions regarding which entities should be part of the domestic industry, "even where this may lead to somewhat different results in individual cases").

Commerce and the ITC perform different functions and have different goals. Here, Commerce has interpreted the term "producer" with the goal of determining which parties have a stake in the domestic industry and how to calculate that industry support. The ITC has, in contrast, interpreted the term "producer" to determine whether the domestic industry has suffered a material injury as a result of imports. Thus, the ITC's determination of the meaning of "producers" remains separate and apart from Commerce's, and any differences do not change the present outcome.

In summary, Commerce's determination was supported by substantial evidence, and that Commerce and the ITC may have come to different conclusions regarding whether fabricators were producers plays no role in our determination whether Commerce's determination was based on substantial evidence.

## CONCLUSION

We have considered MSI's remaining arguments, but we find them unpersuasive. For the foregoing reasons, the decision of the Trade Court is affirmed.

**AFFIRMED**