NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

———————————

**CENTRIPETAL NETWORKS, LLC,**
*Appellant*

**v.**

**INTERNATIONAL TRADE COMMISSION,**
*Appellee*

**KEYSIGHT TECHNOLOGIES, INC.,**
*Intervenor*

———————————

2024-1416

———————————

Appeal from the United States International Trade Commission in Investigation No. 337-TA-1314.

———————————

Decided:  April 23, 2026

———————————

DANIEL J. RICHARDSON, Sullivan & Cromwell LLP, Washington, DC, argued for appellant.  Also represented by JEFFREY B. WALL; AVIV S. HALPERN, Palo Alto, CA; ANDREI IANCU, Los Angeles, CA; LAURIE STEMPLER, New York, NY.

ROBERT JOHN NEEDHAM, Office of the General Counsel, United States International Trade Commission,

Washington, DC, argued for appellee. Also represented by MICHELLE W. KLANCNIK.

JONAH D. MITCHELL, Reed Smith LLP, San Francisco, CA, argued for intervenor. Also represented by SETH BENJAMIN HERRING, CHRISTINE M. MORGAN, CHRISTOPHER JOHN PULIDO; GERARD M. DONOVAN, Washington, DC; JAMES CHRISTOPHER MARTIN, Pittsburgh, PA.

_____

Before PROST, WALLACH, and STARK, *Circuit Judges*.

WALLACH, *Circuit Judge*.

Based on a Complaint filed by Centripetal Networks, LLC ("Centripetal"), alleging that Keysight Technologies, Inc. ("Keysight")[1] violated 19 U.S.C. § 1337 ("Section 337") in the importation and sale of articles that infringe certain claims of U.S. Patent Nos. 9,264,370 ("the '370 Patent"), 10,193,917 ("the '917 Patent), and 10,284,526 ("the '526 Patent"), the U.S. International Trade Commission ("the Commission") instituted investigation No. 337-TA-1314. J.A. 36225. On August 8, 2023, the administrative law judge issued a final initial determination ("Final ID"), finding no violation of Section 337 as to any asserted patent claim. J.A. 5, J.A. 286–87. Subsequently, the Commission affirmed the Final ID[2] and terminated the investigation. J.A. 1. Centripetal appeals the Commission's finding of no

_____

[1]   On February 23, 2024, Keysight moved for leave to intervene, ECF No. 15, which the Court granted on February 28, 2024, ECF No. 16.

[2]   The Commission modified certain findings regarding the '526 Patent and took no position regarding whether the economic prong of the domestic industry requirement was satisfied, issues which are not relevant to this appeal, and otherwise adopted the remainder of the Final ID as its own. J.A. 1–4.

violation, with respect to the '370 and '917 Patents.[3]  We have jurisdiction under 28 U.S.C. § 1295(a)(6).  *We affirm*.

BACKGROUND

I.   The Asserted Patents[4]

A.  The '370 Patent

Titled "Correlating Packets in Communications Networks," the '370 Patent purports to address "a need for correlating packets in communications networks." '370 Patent at col. 1, ll. 14–15.  As the patent explains, "[c]ommunications between endpoints of packet-switched networks may be characterized as flows of associated packets" and "[a] particular flow may include packets containing information (e.g., within headers of the packets) that distinguishes the packets from packets associated with other flows." *Id.* at col. 1, ll. 6–10.

The patent explains that in the prior art, "[n]etwork devices located between endpoints may alter packets associated with a flow and in doing so may potentially obfuscate the flow with which a particular packet is associated from other network devices." *Id.* at col. 1, ll. 10–14.

The '370 Patent purports to address this potential obfuscation problem by "[c]orrelating the packets transmitted by the network device with the packets received by the network device," which "may enable the computing system to determine that the packets transmitted by the network device are associated with the

---

[3]   Centripetal does not appeal the Commission's finding that the '526 Patent is invalid and not infringed. Appellant Br. at 17 n.1.

[4]   For reasons explained below, we do not need to reach a detailed discussion of the '917 Patent. *See infra* Discussion.

flow(s)." *Id.* at col. 1, ll. 45–49. Figure 4, reproduced below, "depicts an illustrative environment for correlating packets in communications networks in accordance with one or more aspects of the disclosure." *Id.* at col. 2, ll. 4–6.



FIG. 4

*Id.* at FIG. 4.

Referring to Figure 4, the patent explains that "at step 402, a computing system may identify packets received by a network device from a host located in a first network."

*Id.* at col. 13, ll. 38–40. "At step 404, the computing system may generate log entries corresponding to the packets received by the network device." *Id.* at col. 13, ll. 41–43. "At step 408, the computing system may generate log entries corresponding to the packets transmitted by the network device." *Id.* at col. 13, ll. 48–50. Finally, "[a]t step 410, the computing system may correlate, based on the log entries corresponding to the packets received by the network device and the log entries corresponding to the packets transmitted by the network device, the packets transmitted by the network device with the packets received by the network device." *Id.* at col. 13, ll. 51–56.

Claim 22, which is representative of the '370 Patent claims at issue,[5] recites:[6]

> 22(a).  A system comprising: at least one processor; and a memory storing instructions that when executed by the at least one processor cause the system to:
>
>> (b) provision a device in a communication link interfacing a network device and a first network with one or more rules configured to identify a plurality of packets received by the network device from a host located in the first network;
>>
>> (c) provision a device in a communication link interfacing the network device and a second network with one or more rules configured to identify a plurality of packets

---

[5]  *See* Appellant Br. at Cover; Appellee Br. at Cover (ITC).

[6]  This recitation of claim 22 is annotated with the claim element identifiers used by the Commission in its Final ID.  *See* J.A. 46.

transmitted by the network device to a host located in a second network;

(d) provision the device in the communication link interfacing the network device and the first network and the device in the communication link interfacing the network device and the second network with one or more rules specifying a set of network addresses and configured to cause the system to log packets destined for one or more network addresses in the set of network addresses;

(e) configure the device in the communication link interfacing the network device with the first network to:

> identify the plurality of packets received by the network device;

> generate a plurality of log entries corresponding to the plurality of packets received by the network device; and

> communicate, to the system, the plurality of log entries corresponding to the plurality of packets received by the network device;

(f) configure the device in the communication link interfacing the network device with the second network to:

> identify the plurality of packets transmitted by the network device;

> generate a plurality of log entries corresponding to the plurality of

packets transmitted by the network device; and

communicate, to the system, the plurality of log entries corresponding to the plurality of packets transmitted by the network device;

(g) correlate, based on the plurality of log entries corresponding to the plurality of packets received by the network device and the plurality of log entries corresponding to the plurality of packets transmitted by the network device, the plurality of packets transmitted by the network device with the plurality of packets received by the network device; and

(h) responsive to correlating the plurality of packets transmitted by the network device with the plurality of packets received by the network device:

generate data identifying the host located in the first network; and

communicate, to a device located in the first network, the data identifying the host located in the first network.

J.A. 46.

## II.  The Accused Products and Asserted Domestic Industry Product

The accused products relating to the '370 Patent are several versions of Keysight's Vision products. J.A. 500. Specifically, Vision One, Vision X, Vision 7300, Vision 7303, Vision Edge 1S, and Trade Vision (collectively, "the Accused Products"). J.A. 500. Generally, the Accused

Products are network traffic monitoring and security enforcement computer equipment, as well as related software components, which allow users to monitor network traffic, filter packets based on different aspects of that traffic, and organize, analyze, and review data on the packets that are received. J.A. 51612–13. The asserted domestic industry product for both patents is Centripetal's CleanINTERNET solution ("DI Product"), which includes RuleGATE, ACT, and QuickTHREAT components. J.A. 51; J.A. 51609.

## STANDARD OF REVIEW

"This court reviews the Commission's legal determinations without deference and its factual findings for substantial evidence." *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1302 (Fed. Cir. 2010). We review the Commission's factual findings regarding infringement and satisfaction of the technical prong for substantial evidence. *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368, 1375 (Fed. Cir. 2003).

"Substantial evidence is something less than the weight of the evidence but more than a mere scintilla of evidence." *In re Nuvasive, Inc.*, 842 F.3d 1376, 1379 (Fed. Cir. 2016) (quoting *In re Kotzab*, 217 F.3d 1365, 1369 (Fed. Cir. 2000)). The substantial evidence standard "involves examination of the record as a whole, taking into account evidence that both justifies and detracts from an agency's decision." *TQ Delta, LLC v. Cisco Sys., Inc.*, 942 F.3d 1352, 1358 (Fed. Cir. 2019) (citation omitted). However, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966).

DISCUSSION

Relevant here, today, in a separate appeal, we affirmed the unpatentability of claims 11 and 20 of the '917 Patent in view of Sourcefire. *See Centripetal Networks, LLC v. Keysight Techs., Inc.*, No. 24-1406 (Fed. Cir. Apr. 23, 2026). Given that affirmance, which moots the issues relating to the '917 Patent, the only remaining issues relate to the '370 Patent.

For the '370 Patent, the Commission's finding of no Section 337 violation rests on three independent grounds— the failure to establish the technical prong of the domestic industry requirement; the failure to show infringement; and patent ineligibility. J.A. 83, 93, 150. Centripetal must therefore prevail on all three grounds in this appeal. For the reasons explained below, we hold that substantial evidence supports the Commission's finding that Centripetal's DI Product failed to satisfy the technical prong of the domestic industry requirement. We also find Centripetal waived any challenge to the Commission's finding of non-infringement. Because these grounds independently support the Commission's finding of no Section 337 violation, we do not need to reach the patent ineligibility ground, and we affirm.

I.    Section 337 — The '370 Patent

To show a  violation under Section 337, a complainant must meet at least the following requirements. "First, the respondents named in the Commission proceeding must be importing 'articles that . . . infringe' a United States patent." *Lashify, Inc. v. Int'l Trade Comm'n*, 130 F.4th 948, 954 (Fed. Cir. 2025) (citing 19 U.S.C. § 1337(a)(1)(B)). "Second, there must be (already or in process of establishment) an industry in the United States that relates to the articles protected by the patent." *Id.* (citing § 1337(a)(2)). This second requirement, which is commonly referred to as "the domestic-industry requirement," is commonly described as having two requirements: (1) the

"economic prong" and (2) the "technical prong." *Id.* As to the technical prong, the test "is essentially same as that for infringement, i.e., a comparison of domestic products to the asserted claims." *Alloc, Inc.*, 342 F.3d at 1375. "Put simply, the complainant must practice its own patent." *Crocs, Inc.*, 598 F.3d at 1307.

Starting with the domestic industry requirement, the Commission found that Centripetal failed to establish the technical prong because it failed to identify a Centripetal product that meets limitations (b) through (f) of claim 22.[7] *See* J.A. 87. On appeal, Centripetal argues the Commission's finding "that the physical hardware in the CleanINTERNET Solution products could not, on their own, meet the claim's 'device' limitations" is not supported by the record. Appellant Br. at 62. In support of its argument, Centripetal asserts that "Dr. Moore demonstrated that the devices were the combination of hardware (physical ports on the RuleGATE appliance) and software (Advanced Cyber Threat, or 'ACT,' and QuickTHREAT)." Appellant Br. at 63. Centripetal maintains that it "argued throughout the proceedings below that the 'device' in the CleanINTERNET Solution products was the combination of the RuleGATE ports and their accompanying software." Appellant Br. at 64. Centripetal also argues that both its witnesses, Dr. Moore and Dr. Medvidovic, testified that the RuleGATE "ports could be provisioned with rules and generate log entries." Appellant Br. at 63. We disagree and hold that the Commission's finding is supported by substantial evidence.

---

[7] The Commission found that Centripetal waived any argument with respect to claim 43 regarding the technical prong. J.A. 84 n.38. Centripetal does not challenge this finding on appeal. *See* Appellant Br. at 62–65.

As the Commission explained, claim 22 requires, among other things, two "devices" that can be provisioned with rules, identify packets, generate log entries, and communicate the log entries to the system. J.A. 86. Because of this requirement, the Commission found that Centripetal's DI Product does not practice claim 22 because the RuleGATE "ports are simply electrical interfaces for connecting network cables" and cannot perform the required functions. *See* J.A. 87. The Commission relied on testimony from Keysight's expert witness, Dr. Rubin, and Centripetal's fact witness, Dr. Moore, in finding that the RuleGATE ports cannot meet the claim's "device" limitations. *See* J.A. 87–88. A review of this testimony shows that a reasonable factfinder could have arrived at the same conclusion as the Commission—Centripetal's DI Product does not practice limitations (b) through (f) of claim 22. For instance, when Dr. Moore was questioned about RuleGATE, he testified that the rules are stored in the "RuleGATE appliance," J.A. 38022, of which the ports are an "integrated part," J.A. 38008–09. Dr. Moore did not testify that the rules are stored in the physical ports themselves. Moreover, Keysight's expert answered in the negative when asked whether he had "seen any evidence suggesting that the RuleGate device utilizes smart ports to practice the claimed invention." J.A. 38583.

While Centripetal argues that both of its witnesses, Dr. Moore and Dr. Medvidovic, testified that the RuleGATE "ports could be provisioned with rules and generate log entries," Appellant Br. at 63, this argument fails. First, Centripetal overlooks the fact that Dr. Moore testified that the RuleGATE appliance itself stores and applies the rules, not the physical ports. *See* J.A. 38002 (testifying that the RuleGATE appliance applies the rules); J.A. 38021–22 (testifying that the RuleGATE appliance creates and stores the rules). Second, although Centripetal argues that Dr. Medvidovic testified that the ports can be provisioned with rules, this singular piece of evidence is not

enough to show a lack of substantial evidence supporting the Commission's contrary finding. "[W]here two different, inconsistent conclusions may reasonably be drawn from the evidence in record, an agency's decision to favor one conclusion over the other is the epitome of a decision that must be sustained upon review for substantial evidence." *Pokarna Engineered Stone Ltd. v. United States*, 56 F.4th 1345, 1349 (Fed. Cir. 2023) (alteration in original and citation omitted). Here, the Commission analyzed testimony from both sides and found that Centripetal failed to establish the technical prong. This finding is supported by substantial evidence.

However, even if we concluded otherwise, an affirmance of no violation would still be warranted because Centripetal has waived multiple appeal-dispositive issues of infringement regarding certain limitations of claims 22 and 43 of the '370 Patent. For the infringement requirement of Section 337, the Government argues that Centripetal's Opening Brief "does not squarely address" the Commission's finding that Centripetal failed to show how the Accused Products meet limitations (e) and (f) of claims 22 and 43. Appellee Br. at 39–40 (ITC). The Government asserts that "Centripetal ignores the 'identify' and 'communicate' aspects" of those limitations, and in so doing, has "waived any ability to contest those findings." Appellee Br. at 39–40 (ITC). We agree. While Centripetal's Opening Brief does argue that the Accused Products include "devices" that satisfy the "generate . . . log entries" aspect of the claims, Appellant Br. at 48–50, it fails to address the Commission's findings regarding the "communicate" and "identify" aspects of limitations (e) and (f), *see* Appellant Br. at 47–53. As such, Centripetal has waived its ability to contest the Commission's finding regarding non-infringement of these two limitations.

Moreover, the Government further argues that Centripetal waived its limitation (h) "communicate" arguments by failing to address the Commission's own

finding of waiver regarding this limitation. Appellee Br. at 46 (ITC). Again, we agree. The Commission found that because Centripetal's Pre-Hearing Brief "failed to address the portion of . . . element [(h)] requiring that the system 'communicate, to a device located in the first network, the data identifying the host located in the first network,'" "any argument on this issue is deemed [waived]." J.A. 81–82. Although Centripetal's Opening Brief on appeal does discuss the "communicate" aspect of limitation (h), its brief is devoid of any analysis regarding the Commission's finding of waiver as to this aspect of limitation (h). *See* Appellant Br. at 58–62. These waivers, alone, require affirmance of the Commission's finding of no violation regarding the '370 Patent.

## CONCLUSION

We have considered Centripetal's remaining arguments but do not find them persuasive. For the foregoing reasons, we affirm.

## **AFFIRMED**